2 Ill. App.3d 415 (1971)
275 N.E.2d 679
DORIS A. STEICHMAN, Plaintiff-Appellee,
v.
ROY HURST et al., Defendants-Appellants.
No. 70-258.
Illinois Appellate Court  Second District.
November 17, 1971.
*416 Gates W. Clancy and James S. Mills, both of Geneva, for appellants.
Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.
Judgment affirmed.
Mr. JUSTICE GUILD delivered the opinion of the court:
This appeal arises from a suit for personal injuries in which a jury *417 verdict was returned for the plaintiff mail carrier and against defendant dog owners, assessing damages at $15,000.
 1 Plaintiff's complaint consisted of two counts. The first alleged ownership of the dog by defendants, that it was running freely about the area when plaintiff peacefully approached the front door of defendant's home to deliver their mail, and that without provocation the dog attacked plaintiff causing her to fall and sustain injuries to her wrist and left knee at a time the following statute was in force:
"If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained * * *." Ill. Rev. Stat. 1967, ch. 8, par. 12(d).
The second was a common-law count alleging the defendant owners knew, or in the exercise of ordinary care should have known, of the dog's vicious and dangerous propensities but negligently failed to chain or leash the dog. Both the statutory and common law remedies are available. (Reeves v. Eckles (1966), 77 Ill. App.2d 408, 222 N.E.2d 530.) In this case, the verdict was a general one containing no reference to a particular count or cause of action.
Mrs. Hurst, one of the defendants, testified that although their small 10 lb. dog "Jinx" was generally kept in the house, she had seen him chase the milkman, the garbage man, and the paper boy, and had once received an angry phone call from a person who identified herself as the paper boy's mother. She said she had no knowledge Jinx had actually bitten anyone. Two brothers who had successively delivered papers to defendants' home each testified to having been bitten by Jinx. One made a report to his boss but not to the police and did not personally complain to Mr. or Mrs. Hurst. The other young man could not recall whether he had notified Mrs. Hurst. Their mother testified she had phoned Mrs. Hurst three times about the dog during the period her sons were delivering papers. Plaintiff testified Jinx had harassed her no less than 12 times before her injury, and she had told the Hurst children of the dog's conduct.
 2-4 Defendants contend on appeal that the record fails to show their scienter of the dog's propensities. The evidence essential to sustain the common law count was sufficient, we believe, to warrant the jury's finding. "Proof may be made by evidence of facts and circumstances from which an inference of knowledge arises." (Domm v. Hollenbeck 259 (1913), Ill. 382, 386, 102 N.E. 782) the owner of a dog that has shown a disposition to bite or attack can no longer rely on the dog's being harmless (Klatz v. Pfeffer (1928), 333 Ill. 90, 95, 164 N.E. 224); and *418 it is not the law that an owner must have notice of an unjustifiable biting if he has knowledge of attacks upon persons without actual biting, sufficient to put him upon notice of a dog's vicious propensities (Johnson v. Eckberg (1900), 94 Ill. App. 634, 637).
At trial, defendants pointed out the disparity in size of Jinx and the plaintiff, stressing the dog's small stature and weight, and having a small child lead this silent, leashed "witness", in a most tractable mood, about the courtroom before the jury. The plaintiff, they insisted weighed 180 lbs., had terrorized this small dog, and provoked the occurrence, but the jury did not agree. On appeal, defendants continue to claim provocation by Mrs. Steichman which would defeat her statutory claim.
The evidence indicated that on a number of earlier occasions, Jinx had harassed plaintiff by barking, growling, baring his teeth, running in circles about her and making little charges at her. Plaintiff had been bitten by another dog about a month before, and the previous Saturday had thrown a stone at Jinx when the dog appeared halfway down the block. On the day in question, she had with her a spray can of "Halt" issued by the Post Office for use versus attacking dogs. Plaintiff was watchful of Jinx from several houses away and approached the Hurst property to deposit their mail in a box at the front of the house only after observing the dog disappear around the back. Plaintiff walked down a neighboring driveway and stood at the corner of the Hurst home looking for Jinx. Not seeing him, she started across the lawn, but then heard his collar tags jingle as he appeared around a corner. When Jinx was three feet away, growling and barking, plaintiff sprayed him with Halt. The dog ran down the driveway and came up under the car toward plaintiff snarling and barking when she sprayed him a second time. After waiting a moment to see that the dog had not returned, plaintiff went up onto a concrete stoop and deposited the Hurst mail in their box. When she turned around, Jinx was there with teeth bared, growling and barking. Plaintiff stood there a minute, tried to back up to ring the bell, attempted to walk to each side but the dog followed her movements. Jinx charged at her leg. When his teeth were about six inches away, she pulled her leg to the side, spraying Jinx as she fell on her knee to the concrete sidewalk beyond the raised stoop. She cried after she fell, picked herself up and continued on her route, noticing pain and at lunchtime observed her knee was swollen and discolored.
 5, 6 Defendants rely on Siewerth v. Charleston (1967), 89 Ill. App.2d 64, 231 N.E.2d 644, but we find the factual situations incomparable. In that case, two young children had several times kicked an injured dog lying upon its owner's porch and one of them was bitten after they had been requested to leave. Plaintiff in this case was performing a lawful *419 service in delivering mail to the defendant's home and had reason to be apprehensive of Jinx. He was a little dog true, but one often at large with a relish for harassment of persons whose duties brought them within his range. Plaintiff's acts in spraying Jinx were not unpeaceable or provocative but were reasonable measures for self protection evoked by the dog's actions and deterring him only momentarily. The jury clearly believed Jinx caused plaintiff's fall, and the fact that she is the only occurrence witness does not defeat her claim. Recovery for injuries sustained in a fall caused by a puppy and testified to only by the plaintiff was affirmed in McEvoy v. Brown (1958), 17 Ill. App.2d 470, 150 N.E.2d 652.
 7, 8 Defendants further contend that the causal connection between plaintiff's injuries and her fall were not established to a reasonable certainty. Plaintiff finished her route on the day of the fall, elevated and "iced" her leg that night. The following day she worked inside, and the next day consulted a Dr. Hill who did not testify. While in his care, plaintiff had physical therapy treatments three times a week for three months. She next consulted an orthopedic surgeon who continued treatment for another three months and then performed surgery on her left knee. While recovering, she visited the post office and her leg was hurt a little when someone pulled a stool while she was sitting on it. She later returned to delivering her route on a part-time basis, experienced several months of pain, and walked stiff-legged, remaining under the surgeon's care for an additional six months. About a year after surgery, she consulted another doctor because of buckling and instability in her knee and fell while walking her route when her knee buckled. She wore an elastic bandage and then a cylinder cast on her leg until she went to a rehabilitation center for about a month. The orthopedic surgeon testified that he had diagnosed plaintiff's problem with her knee as one requiring surgical intervention and that his opinion, based on a reasonable degree of medical and surgical certainty was that her condition might or could have been caused by the fall related in her history. His reason was that she showed some instability and some changes in the joint which occur after either acute or chronic recurring injury. There is sufficient evidence in this record to support the jury's conclusion that plaintiff's difficulty with her left knee arose out of the fall caused by Jinx. The opinion of the surgeon that plaintiff's condition might or could have been caused by the fall was a proper method of proving the causal connection. (Davis v. East St. L. & Suburban Ry. Co. (1937), 290 Ill. App. 540, 545, 9 N.E.2d 254; Duncan v. Martin's Restaurant Inc. (1952), 347 Ill. App. 183, 188, 106 N.E.2d 731.) We find inapplicable here defendant's citations of cases such as Carter v. Winter (1964), 50 Ill. App.2d 467, *420 483, 200 N.E.2d 528 where there was no evidence of a blow to the chest assumed as the basis of medical opinions, and Manion v. Brant Oil Co. (1967), 85 Ill. App.2d 129, 132, 229 N.E.2d 171, where an autopsy showed death resulted from degenerative causes and none of them could be attributed directly to trauma.
 9 The trial judge did not err in admitting into evidence plaintiff's bill for care at the rehabilitation center following a subsequent fall when her knee buckled or she slipped on ice. These descriptions of the incident are not necessarily incompatible, and as the surgeon testified to instability and a change in the knee joint resulting from the original fall, the subsequent difficulties were reasonably foreseeable. This record does not show an intervening, independent cause of reinjury sufficient to break the causal connection and relieve defendants of liability. See Neering v. I.C. Ry. Co. (1943), 383 Ill. 366, 50 N.E.2d 497; Phillabaum v. L.E. & W. Ry. Co. (1924), 315 Ill. 129, 135, 136, 137, 145 N.E. 806.
 10, 11 In final argument, defendants' counsel remarked that he wondered why Dr. Hill wasn't brought in and recited the nature of plaintiff's consultation with him. There was no foundation for an inference adverse to plaintiff as there had been no showing Dr. Hill was under the control of plaintiff or not as available to defendants as he was to plaintiff. (See Hoff v. Yellow Cab Co. (1964), 53 Ill. App.2d 333, 336, 203 N.E.2d 8.) In rebuttal, plaintiff's counsel responded that he had done the best he could with the available time and money by bringing in the surgeon, and that defendants' counsel had in his file every report Dr. Hill ever made concerning plaintiff's injury. The trial judge sustained defendants' objection and denied a mistrial. There was no error, as Dr. Hill's absence was raised by defendants inviting plaintiff's rebuttal (see Lembeck v. Brady (1966), 78 Ill. App.2d 146, 152, 222 N.E.2d 704), and the response was not so intemperate as to deprive defendants of a fair trial and require declaration of a mistrial.
 12, 13 Finally, defendants suggest the verdict is against the manifest weight of the evidence. To sustain that position, an opposite conclusion must be clearly evident, (Prowell v. Twin Mills Lumber Corp. (1967), 79 Ill. App.2d 401, 408, 223 N.E.2d 749.) This is not the case as the jury's verdict is supported by substantial evidence; it is not our function to disturb it.
Judgment affirmed.
ABRAHAMSON and DIXON, JJ., concur.