JAMIE ROBINSON, a Minor, by Vivian Robinson, her Mother and Next Friend, Plaintiff-Appellant, v. CLARA MEADOWS, Indiv. and as Adm'r of the Estate of Charles Meadows, Deceased, Defendant-Appellee.

Fifth District   No. 5—89—0706

Opinion filed August 14, 1990.

Harris & Lambert, of Marion, for appellant.

Charles E. Schmidt, of Mitchell, Brandon & Schmidt, of Carbondale, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Jamie Robinson, by her mother and next friend, brought an action in the circuit court of Saline County to recover damages for personal injuries she sustained when she was attacked by a dog owned by Clara and Charles Meadows. After the action was filed, Charles Meadows died, and the matter proceeded to trial against Clara Meadows, individually and as the administrator of Charles Meadows' estate. At the conclusion of the trial, the jury returned a verdict in favor of the Meadowses and against plaintiff. Plaintiff's post-trial motion was denied, and she now appeals. For the reasons which follow, we hold that the circuit court should have entered judgment notwithstanding the verdict in favor of plaintiff on the question of liability and ordered that plaintiff be given a new trial on the issue of damages. We therefore reverse and remand with directions.

The evidence presented to the jury established that on Saturday, October 5, 1985, plaintiff accompanied her mother, Vivian Robinson, when her mother paid a social call on Clara Meadows at the Meadowses' home. At the time, plaintiff was just under four years old. Plaintiff's mother and Clara Meadows were friends and former co-workers, and Clara had previously babysat for plaintiff.

Upon their arrival at the Meadowses' home, plaintiff and her mother were welcomed by Charles Meadows. They went into the living room, where Clara and plaintiff's mother sat and talked. Plaintiff remained in the living room with them. She played there as they talked, and occasionally she would speak to Clara or sit down beside her. According to Clara, plaintiff "was just playing around, she sat on my lap some, there was an ottoman on the left side of me and she would sit on that, we talked, she liked to be talked to, she's a nice child." At no time was plaintiff boisterous or unruly. To the contrary, Clara stated that plaintiff was "being a good girl."

Also in the living room with plaintiff, plaintiff's mother and Clara were the two dogs which belonged to Clara and her husband. The dogs were named Tippy and Ben. Tippy simply lay in the chair by Clara, while Ben would periodically walk in and out of the room. After nearly an hour, there was a knock on the front door. As was their habit when there was such a knock, Ben and Tippy both ran to the door and began barking. According to plaintiff's mother, Ben became particularly agitated. In her words, he "just went crazy." She stated that Ben "started barking and screeching and jumping at the door

and it was wild." Clara, however, testified that the dog's barks were "normal, you know, like a dog barks, you know, how do they, not an angry bark or anything," and she denied that either of the dogs jumped at the door.

In any case, there is no dispute that the dogs' barks so frightened plaintiff that she screamed. When this happened, Ben, who was approximately six feet away, responded by attacking plaintiff viciously. Ben tore plaintiff's lip and inflicted puncture wounds and scratches on her face, neck and throat.

Plaintiff's mother rushed her to the local hospital. After a brief examination, which revealed that part of plaintiff's lip was missing, plaintiff was referred to a plastic surgeon in Evansville, Indiana. Plaintiff's mother then took her to St. Mary's Medical Center in Evansville, where the plastic surgeon ordered surgery immediately. During the surgery, which was performed under a general anesthetic, the doctor excised a portion of plaintiff's lip and stitched up wounds on her neck and face. Plaintiff was ultimately left with serious scars and a permanent shortening of her lip.

■ In this litigation, plaintiff seeks to recover damages for her injuries based on section 16 of the Animal Control Act (Ill. Rev. Stat. 1985, ch. 8, par. 366), which states:

> "If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained."

■ This statute provides an alternative remedy to that available at common law for a person who has been injured by a dog whose vicious and dangerous propensities were known to its owner. (See *Steichman v. Hurst* (1971), 2 Ill. App. 3d 415, 417, 275 N.E.2d 679, 680.) Unlike the alternative common-law remedy, an action brought under section 16 of the Animal Control Act (Ill. Rev. Stat. 1985, ch. 8, par. 366) does not require proof of the dog's vicious nature or the defendant's knowledge of that nature. (*Steinberg v. Petta* (1986), 114 Ill. 2d 496, 500, 501 N.E.2d 1263, 1265.) Indeed, the very purpose of the legislation was to reduce the burden on plaintiffs by eliminating the common-law requirement that a plaintiff must plead and prove that an animal owner either knew or should have known that the animal had a propensity to injure people. *Forsyth v. Dugger* (1988), 169 Ill. App. 3d 362, 365, 523 N.E.2d 704, 706.

■ Under section 16 of the Animal Control Act (Ill. Rev. Stat. 1985, ch. 8, par. 366), there are only four elements which must be

proved: (1) injury caused by an animal owned by the defendants; (2) lack of provocation; (3) peaceable conduct of the person injured; and (4) the presence of the injured person in a place where he has a legal right to be. (169 Ill. App. 3d at 365, 523 N.E.2d at 706.) In the matter before us, defendants did not dispute that plaintiff was injured by their dog. They admit that at the time of the injury, plaintiff was peaceably conducting herself. They also admit that at the time of the injury, plaintiff was in a place where she had a legal right to be. This left for the jury's determination only the question of whether defendants' dog attacked and injured plaintiff "without provocation."

■■ Section 16 of the Animal Control Act (Ill. Rev. Stat. 1985, ch. 8, par. 366) does not, itself, define the term "provocation." Where, as here, the terms of a statute are not specifically defined, the words must be given their ordinary and popularly understood meanings, but the words must also be construed with reference to the purposes and objectives of the statute. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937, 942.) Where literal enforcement of a statute will result in great injustice which was not contemplated, we will construe the statute to give effect to what must have been reasonably intended by the legislature. *Vanderlei v. Heideman* (1980), 83 Ill. App. 3d 158, 160, 403 N.E.2d 756, 757.

As commonly understood, provocation means an act or process of provoking, stimulation or excitement. (*Nelson v. Lewis* (1976), 36 Ill. App. 3d 130, 131, 344 N.E.2d 268, 270.) Similarly, "to provoke" has been defined as "to excite anger or passion; to exasperate; to irritate; to enrage; to excite; to stimulate; to arouse; to call forth; to call into being or action; cause, occasion." (73 C.J.S. *Provoke* 324-25 (1983).) These definitions are so expansive, however, that, if taken literally, section 16 of the Animal Control Act (Ill. Rev. Stat. 1985, ch. 8, par. 366) could be interpreted to mean that provocation exists whenever any external stimulus has precipitated the attack or injury by an animal, *i.e.*, whenever the animal's actions are not completely spontaneous. Although we are aware of one recent case containing language which seems to support such a view, *Forsyth v. Dugger* (1988), 169 Ill. App. 3d 362, 366, 523 N.E.2d 704, 706, we believe that so literal an interpretation would render the statute largely meaningless and yield unjust and absurd results.

For example, a dog may attack an innocent child riding his bicycle down a public street because the movement of the bicycle has excited it or the sounds of traffic have startled it. Similarly, a dog may bite a bald-headed man walking down the hallway of his apartment building because, for whatever reason, the dog has developed a fear of men

without hair. In each case, "provocation" could be said to exist if that term were given its broad and literal interpretation. As a result, neither the innocent child nor the unfortunate bald-headed man would have any recourse under the statute for his injuries.

That the acts which aroused the dog may have been wholly unintentional would not alter this conclusion. (*Nelson v. Lewis* (1976), 36 Ill. App. 3d 130, 133, 344 N.E.2d 268, 272.) It would not matter that the "provocateur" was a child of tender years. (36 Ill. App. 3d at 133, 344 N.E.2d at 272.) It would not even matter that the person attacked was not the individual or agent who was responsible for stimulating the dog and precipitating its attack. The source of outside stimulus has been held to be immaterial. The "provocation" may be caused by anyone. *Forsyth v. Dugger* (1988), 169 Ill. App. 3d 362, 366, 523 N.E.2d 704, 706.

■ To deny recovery under such circumstances would not only be grossly unfair, it would also be directly contrary to the intent of the statute. As we have indicated, and as our supreme court has recently recognized, the purpose of section 16 of the Animal Control Act (Ill. Rev. Stat. 1985, ch. 8, par. 366) was simply to reduce the burden on dog-bite plaintiffs by eliminating the "one-bite rule"—the common law requirement that a plaintiff must plead and prove that a dog owner either knew or was negligent not to know that his dog had a propensity to injure people. *Harris v. Walker* (1988), 119 Ill. 2d 542, 547, 519 N.E.2d 917, 918.

■ In view of this purpose, obtaining redress for injuries caused by an animal should be easier under the Act than it was under the common law. If, however, provocation could be established merely by showing that an animal's attack resulted from some outside stimulus and was not merely spontaneous, just the opposite would happen. A plaintiff would almost never be able to prevail. We cannot accept such an incongruous result. Although the statute was surely not meant to impose strict liability on animal owners (*Nelson v. Lewis* (1976), 36 Ill. App. 3d 130, 133, 344 N.E.2d 268, 272), we do not believe that it was meant to grant animal owners virtual immunity from liability either.

The parties have not cited, and we have not found, any authority which has systematically analyzed this problem. In attempting to reconcile the expansive interpretation to which the term "provocation" is susceptible, on the one hand, with the purposes of section 16 of the Animal Control Act (Ill. Rev. Stat. 1985, ch. 8, par. 366), on the other, the courts of this State have, for the most part, proceeded on a case-by-case basis. In *McEvoy v. Brown* (1958), 17 Ill. App. 2d 470, 479-80, 150 N.E.2d 652, 655-56, for example, the court found that the mere

acts of untying a dog and feeding it, in the absence of any evidence of any characteristic or action of the dog that would tend to apprise the plaintiff that it might injure her, did not constitute acts of provocation on the plaintiff's part.

In *Messa v. Sullivan* (1965), 61 Ill. App. 2d 386, 394, 209 N.E.2d 872, 876, the court held that where the plaintiff's only actions consisted of stepping off an elevator and walking toward the defendants' apartment door, those actions did not constitute provocation and thereby relieve the owner from liability for the plaintiff's injuries, even though the dog interpreted the plaintiff's movements as hostile actions calling for attack. Similarly, in *Steichman v. Hurst* (1971), 2 Ill. App. 3d 415, 418-19, 275 N.E.2d 679, 681, the court found no provocation where a dog had become agitated by the presence of the mail carrier and attacked her, causing her to fall. This was so even though the mail carrier had sprayed the dog with "Halt," a dog repellent, during the course of the confrontation.

On the other hand, the sort of stimulation which the courts have said can rise to the level of provocation includes pushing or kicking a dog which is recuperating from an injury (*Siewerth v. Charleston* (1967), 89 Ill. App. 2d 64, 231 N.E.2d 644), crossing into an area which a dog is protecting and remaining within the dog's reach while it is eating (*Stehl v. Dose* (1980), 83 Ill. App. 3d 440, 403 N.E.2d 1301), stepping on a dog's tail while it is chewing on a bone (*Nelson v. Lewis* (1976), 36 Ill. App. 3d 130, 344 N.E.2d 208) and jumping on an animal's back (*Forsyth v. Dugger* (1988), 169 Ill. App. 3d 362, 367, 523 N.E.2d 704, 707) (where plaintiff was injured when horse on which he was sitting walked under a tree, plaintiff was precluded from recovering under the Animal Control Act, because the horse's action in walking under the tree was caused by the action of a third party who jumped onto the back of plaintiff's mount).

Most recently, in *Guthrie v. Zielinski* (1989), 185 Ill. App. 3d 266, 270, 541 N.E.2d 178, 180-81, the court concluded that there was at least a disputed material fact on the question of whether plaintiff had provoked a dog to attack her, precluding entry of summary judgment, where the defendants had been warned when they acquired the dog that it was difficult to control; the dog had always disliked plaintiff, who was defendants' adult daughter; and, just before the attack, plaintiff had entered defendants' home through a garage door without knocking or announcing her entry, walked into the kitchen, where plaintiff's mother sometimes allowed the dog to eat, said hello to defendants, then turned to close the door and check the time on a wall clock.

■ Although it is difficult to draw generalizations based on these cases, one principle which this court has recognized is that where the acts which have stimulated or excited the dog were unintentional, as they certainly were in the case before us, no "provocation" can be said to exist within the meaning of section 16 of the Animal Control Act (Ill. Rev. Stat. 1985, ch. 8, par. 366) if the acts cause the dog to attack the plaintiff viciously and the vicious attack is "out of all proportion to the unintentional acts involved." (*Nelson v. Lewis* (1976), 36 Ill. App. 3d 130, 134, 344 N.E.2d 268, 272, citing *Messa v. Sullivan* (1965), 61 Ill. App. 2d 386, 209 N.E.2d 872.) This is just such a case.

■ While plaintiff's frightened scream certainly triggered the attack on her by defendants' dog, that scream cannot be regarded under any reasonable standard as having been sufficient to account for the savagery of the dog's assault. Thus, as a matter of law, no "provocation" can be said to have existed. We must therefore conclude that the evidence, when viewed in its aspect most favorable to the defendant, the nonmoving party, so overwhelmingly favored the plaintiff that no contrary verdict based on it could ever stand. As a result, the circuit court erred in denying plaintiff's motion for judgment notwithstanding the verdict on the issue of liability. See *Steinberg v. Petta* (1986), 114 Ill. 2d 496, 503, 501 N.E.2d 1263, 1267.

Accordingly, the judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment notwithstanding the verdict in favor of plaintiff on the issue of liability and to grant plaintiff a new trial on the issue of damages.

Reversed and remanded with directions.

RARICK and GOLDENHERSH, JJ., concur.