**COMMONWEALTH of Pennsylvania**

v.

**Brad FIGLEY and Marlene Figley.**

**Appeal of Joseph and Pamela Eritano, Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1995.

Decided Aug. 16, 1995.

Elizabeth T. Stevenson, for appellants.

Craig E. Frischman, for appellees.

Before PELLEGRINI and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Joseph and Pamela Eritano (Eritanos) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) vacating a District Justice's order declaring Brad and Marlene Figleys' (Figleys) dog to be dangerous.

The facts, which are not in dispute, are as follows. On September 2, 1991, Eritanos' two children, Lauren, age 5, and Joshua, age 15, were visiting Figleys' home. While there, Lauren went into the kitchen with Figleys' daughter, Nicole, who gave Lauren a piece of chicken to eat. As Lauren attempted to eat the chicken, the Figleys' dog, Sama, an Akita, lunged for the chicken, and while doing so, inadvertently bit Lauren's face and neck causing her severe, disfiguring injuries. There is no evidence that the dog has ever exhibited a propensity for vicious or aggressive behavior, nor has she attacked anyone prior to or subsequent to the incident in question.

Pursuant to Article V–A, the Dangerous Dog section of the Dog Law (the Law),[1] the Eritanos filed a complaint with the District Justice, alleging that the dog, Sama, should be declared dangerous. At the hearing, the District Justice found Sama to

---

[1] The Dangerous Dog section of the Pennsylvania Dog Law, Act of May 31, 1990, P.L. 213 No. 46, § 2, *as amended,* 3 P.S. §§ 459–501–A–459–505–A.

be dangerous under the Law. The Figleys appealed to the trial court which found that Sama was not a dangerous dog because her actions were merely an instinctual response to the chicken that was close to Lauren's face. The Eritanos then took this appeal.[2]

Eritanos argue that the clear language of the Law requires a finding that Sama is a dangerous dog. Specifically, they assert that under the clear language of Section 459–502–A of the Law, 3 P.S. § 459–502–A, Sama should be declared to be a dangerous dog, specifically pursuant to subsection (1) which states that a determination of whether a dog is dangerous may be based upon evidence that the dog, "[i]nflicted severe injury on a human being without provocation on public or private property," and subsection (3) which provides such a determination may be based upon the fact that a dog "[a]ttacked a human being without provocation." Eritanos maintain that because Lauren's injuries were unquestionably severe, Sama is *per se* dangerous pursuant to subsection 1, and that Sama's actions fit the definition of "attack" set forth in the Law.[3]

The full text of Section 459–502–A of the Law provides as follows:

> (a) **Determination.**—Any person who has been attacked by a dog, or anyone on behalf of such person, a person whose domestic animal has been killed or injured without provocation, the State dog warden or the local police officer may make a complaint before a district justice, charging the owner or keeper of such a dog with harboring a dangerous dog. The determination of a dog as a dangerous dog shall be made by the district justice upon evidence of a dog's history or propensity to attack without provocation based upon an incident in which the dog has done one or more of the following:

(1) Inflicted severe injury on a human being without provocation on public or private property.

(2) Killed or inflicted severe injury on a domestic animal without provocation while off the owner's property.

(3) Attacked a human being without provocation.

(4) Been used in the commission of a crime.

The foregoing language specifically requires that, "the determination of a dog as dangerous shall be made ... *based upon evidence of a dog's history or propensity to attack based upon an incident in which the dog has done one or more of the following;*" the Law then lists the four types of conduct upon which a dog may be considered dangerous, including, subsection (1), i.e., [i]nflicted severe injury on a human being without provocation on public or private property, and subsection (3), i.e., [a]ttacked a human being without provocation. However, pursuant to the clear language of the Law, before an analysis of whether the dog alleged to be dangerous is made, evidence of the dog's "history or propensity to attack" must be demonstrated.

Here, a review of the record reveals that no such showing was made, and, in fact, the record reveals, as the trial court so found, that Sama never exhibited a propensity for vicious or aggressive behavior, nor had she attacked Lauren, but that, her actions were merely an instinctual response to the chicken which was close to Lauren's face and, thus, Lauren's bites merely resulted by way of an accident.

Accordingly, based on the foregoing analysis, we affirm the trial court's decision and order.

---

**2.** Our scope of review of a statutory appeal where, as here, the matter has been heard by the trial court *de novo* is limited to a determination of whether the trial court based its findings of fact on substantial competent evidence or committed an error of law. *Department of Transportation, Bureau of Traffic Safety v. Uebelacker*, 98 Pa.Commonwealth Ct. 436, 511 A.2d 929 (1986).

**3.** Section 459–501–A of the Law, 3 P.S. § 459–501–A, defines "attack" as, [t]he deliberate action of a dog, whether or not in response to a command by its owner, to bite, to seize with its teeth or to pursue any human, animate or inanimate object, with the obvious intent to destroy, kill, wound, injure or otherwise harm the object of its action. Because of our subsequent disposition herein, we do not address the issue of whether Sama's actions constituted an "attack" as defined by the Law.

## ORDER

AND NOW, this 16th day of August, 1995, the order of the Court of Common Pleas of Allegheny County dated February 22, 1994 is affirmed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. In holding that, under the Dog Law, the dog must have known prior dangerous propensities before being declared dangerous when it bites or attacks someone, the majority ignores the General Assembly intent when it amended the Dog Law to change the presumption that a dog is considered dangerous if it attacks or severely injures a human being only once. Unfortunately, the case that requires us to interpret this provision for the first time is not based on facts that indicate that the dog is "vicious", but one that may have "unintentionally" inflicted severe injuries on a five year old child illustrating once more that "bad facts make bad law."

The facts are undisputed. As they had often done in the past, the Joseph and Pamela Eritano (Eritanos) children, Lauren, age 5, and Joshua, age 15, visited the home of Brad and Marlene Figley (Figleys). While there, Lauren went into the kitchen with the Figleys' daughter, Nicole, who gave Lauren a piece of chicken. As Lauren attempted to eat the chicken, the Figleys' dog, Sama, an Akita, bit her face and neck causing severe, disfiguring injuries. There is no evidence that the dog has ever exhibited a propensity for vicious or aggressive behavior, nor has she attacked anyone prior to or subsequent to the incident in question.

Pursuant to Article V–A, the Dangerous Dog section of the Dog Law (the Law),[1] the Eritanos filed a complaint with a District Justice, alleging that the dog, Sama, should be declared dangerous.[2] At the hearing, the District Justice found Sama to be dangerous under the Law. The Figleys appealed to the trial court, which found that Sama was not a dangerous dog because her actions were merely an instinctual response to the chicken that was close to her face. The Eritanos then took this appeal.[3]

What conduct on the part of the dog that makes a dog "dangerous" is set forth in Section 2 of the Law. It provides:

The determination of a dog as a dangerous dog shall be made ... upon evidence of a dog's history or propensity to attack without provocation based upon *an* incident in which the dog has done one or more of the following:

(1) *Inflicted severe injury on a human being without provocation on public or private property.*

(2) Killed or inflicted severe injury on a domestic animal without provocation off the owner's property.

(3) Attacked a human being without provocation.

---

1. The Dangerous Dog section of the Pennsylvania Dog Law, Act of May 31, 1990, P.L. 213 No. 46, § 2, 3 P.S. §§ 459–501–A—459–505–A.

2. If a dog is declared dangerous under the Law, the owners of the dog are required to present sufficient evidence of a proper enclosure to confine the dog, and of the posting of a clearly visible, conspicuously displayed sign, warning that a dangerous dog is on the premises, both in writing and with a symbol identifiable to children. 3 P.S. § 459–503–A(a)(1). The owners of a dangerous dog must also present sufficient evidence of a surety bond in the amount of $50,000, or of an insurance policy (with special terms) in the amount of $50,000, payable as damages for any personal injury inflicted by the dangerous dog. 3 P.S. § 459–503–A(a)(2). Furthermore, the Law requires that the owner register the dog as dangerous, and obtain a dangerous dog certificate. 3 P.S. § 459–503–A. Finally, it is unlawful for the owner of a dangerous dog to permit the dog to be out of the proper enclosure without a muzzle and restraint of a substantial chain or leash. 3 P.S. § 459–504–A. The dog, outside of the proper enclosure, must be in the control of a responsible person. 3 P.S. § 459–504–A. Any violation of the requirements of the Law subjects the dog owner to a charge of a misdemeanor in the third degree. 3 P.S. § 459–505–A(a).

3. Our scope of review of a statutory appeal where the matter has been heard by the trial court *de novo* is limited to a determination of whether the trial court based its findings of fact on substantial competent evidence or committed an error of law. *Department of Transportation, Bureau of Traffic Safety v. Uebelacker,* 98 Pa.Commonwealth Ct. 436, 511 A.2d 929 (1986).

(4) Been used in the commission of a crime.

3 P.S. § 459–502–A.

The majority finds that, for a dog to be declared dangerous under this section, you are required, "pursuant to the clear language of the Law, before an analysis of whether the dog alleged to be dangerous is made, evidence of the 'dog's history or propensity to attack' must be demonstrated." It then goes on to say that since Sama never previously exhibited a propensity for vicious or aggressive behavior, and her attack on Lauren was an instinctional response and an accident, Sama cannot be considered a dangerous dog under the Dog Law. Like the majority, I believe the language of the Dog Law is clear but would come to the opposite conclusion.

Pennsylvania, as well as other states, including Ohio (ORC.Ann. 955.11–955.99), Illinois (510 ILCS 5/15), Minnesota (MinnStat. @ 347.50), Florida (Fla.Stat. @ 767.10–767.14), Colorado (C.R.S. 18–9–204.5) and the District of Columbia (D.C.Code @ 6–1001—6–1021.8), have recently enacted dangerous dog laws to provide an alternative to the common-law remedy available only to those who have been injured by a dog whose vicious and dangerous propensities were known to its owner. *Robinson v. Meadows,* 203 Ill.App.3d 706, 148 Ill.Dec. 805, 561 N.E.2d 111 (1990), *cert. denied,* 135 Ill.2d 566, 151 Ill.Dec. 392, 564 N.E.2d 847 (1990). Under the common law, thus, the dog owner is not liable for the dog's first bite or attack. The theory behind the common law rule is that the owner should not be held liable for the first incident in which his or her dog attacks because, until such incident, the own-

er has no reason to know of the dog's vicious propensity. *Andrews v. Smith,* 324 Pa. 455, 188 A. 146 (1936); *Deardorff v. Burger,* 606 A.2d 489, 414 Pa.Superior Ct. 45 (1992).[4] However, as many dog owners maintain no control over their dogs, and as an increasing number of dog owners keep dogs known specifically for their viciousness, dangerous dogs have become a serious threat to many communities, and in response, many states have enacted laws similar to Pennsylvania's Dangerous Dog Law. These laws provide methods for the confinement of animals that are dangerous, as well as reduce the burden placed upon injured parties so that they need no longer fulfill the common-law requirement of pleading and proving that an animal owner either knew or should have known of the animal's propensity to injure people. *Forsyth v. Dugger,* 169 Ill.App.3d 362, 365, 119 Ill.Dec. 948, 950, 523 N.E.2d 704, 706 (1988), *cert. denied,* 122 Ill.2d 574, 125 Ill.Dec. 216, 530 N.E.2d 244 (1988). The majority's interpretation of the statute merely readopts the common law rule effectively repealing the dangerous dog section of the Dog Law.

The majority's holding that there has to be evidence of a dog's history or propensity to attack has to be other than that the incident in question ignores that the Dog Law requires only that *"an"* incident of proscribed conduct under the Dog Law has to be proven and that nothing excludes the first time the dog engages in that activity from being "an" incident. The Dog Law only requires that for a dog to be declared dangerous, it has to be involved in "an" incident—one incident—of any one of the proscribed activities.[5] As provided in subsection 1, if Sama bit Lauren without provocation causing severe injury[6]

---

**4.** In *Andrews,* our Supreme Court, set forth the common law formulation as follows:

The theory upon which courts have so long ruled that liability for damages cannot be fastened upon the owner of a dog when that dog has bitten someone unless the owner knew of the dog's vicious propensities, is that it would be unfair to hold the owners of domestic animals that are normally harmless responsible for the vicious acts of these animals unless they were put on notice that the animal was vicious. In so holding, the courts have merely applied the principle that no man is responsible for injuries caused by his property unless he himself was guilty of negligence in his manner of controlling or not controlling that property.

*324 Pa. at 459–460, 188 A. 146 (emphasis added).*

**5.** The Figleys further contend that an appeal of the trial court's determination violates their right against double jeopardy. Because the action is not a criminal but a civil one, the concept of double jeopardy is inapplicable.

**6.** Section 459–501–A of the Dangerous Dog Law defines "severe injury" as "any physical injury that results in broken bones or disfiguring lacerations requiring multiple sutures or cosmetic surgery." The Figleys have stipulated that Sama caused Lauren Eritano to suffer a severe injury for which she required medical treatment. The

and disfigurement, Sama is then considered a dangerous dog.

Unlike subsection 3,[7] requiring a finding that the dog "attacked" a human being, subsection 1 is outcome based; if there is a severe injury, even if the dog inflicted it accidentally, then the dog is defined as dangerous. It is undisputed that Sama inflicted upon Lauren a severe injury with disfiguring lacerations, as provided for in subsection 1. The majority seems to imply that Lauren's eating of the chicken was an excuse, a provocation that excused Sama's conduct. While "provocation" is an exculpating factor, provocation does not exist here.

While not defined by the law, as commonly used, "to provoke" is understood as meaning "to excite anger or passion; to exasperate; to irritate; to enrage; to excite; to stimulate; to arouse." 73 C.J.S. Provoke 324-25 (1983). "To provoke" has also been defined by *Webster's Ninth New Collegiate Dictionary* 408 (1989), as "to arouse to a feeling or action; to incite anger; to call forth; or to stir up purposefully." As can be seen from these definitions, provocation requires more than just engaging in an activity such as eating. Provocation requires an action against the dog, its owner(s) or property, which causes the dog to bite, not just engaging in normal activity.

Consistent with this meaning, other states in interpreting their dog laws, have held that normal activity, although causing the dog to act instinctively, does not constitute adequate provocation. No provocation was found to exist when a child, wishing to feed a dog, was bitten by the dog when she took a milk bone from its dish. *Sand v. Gold*, 301 So.2d 828 (Fla.App.1974), *cert. denied*, 312 So.2d 752 (Fla.1975). Also, where a thirteen year old boy was bit upon the face and leg by a dog as he was being handed pepperoni sticks by his father, the court held that the boy's actions were not a provocation which would excuse the attack. *Sandoval v. Birx*, 767 P.2d 759, 760, (Colo.App.1988). *See also, Robinson v. Meadows*, 203 Ill.App.3d 706, 148 Ill.Dec. 805, 561 N.E.2d 111 (1990), *cert. denied*, 135 Il.2d 566, 151 Ill.Dec. 392, 564 N.E.2d 847 (1990) (the scream of a small child is insufficient provocation for a dog attack); *Logan County Animal Control Warden v. Danley*, 211 Ill.App.3d 198, 155 Ill.Dec. 615, 569 N.E.2d 1226 (1991) (the mere presence of hogs is not sufficient provocation for a dog to attack). As those cases illustrate, a dog may have acted instinctively or reflexively, but instinctive or reflexive action to stimuli not directed against the dog, its owner or property, is not a provocation that would excuse a dog's causing serious harm to a human.

Even though this was an isolated incident and Sama neither before nor since has bitten anyone, the Law makes a dog "dangerous" if the dog inflicts serious injuries on a human just once. Because there is no dispute that Lauren Eritano was severely injured, there was no legal provocation, and even if Sama's injury to her was unintentional, Sama is a dangerous dog under subsection 1 of the Law. Accordingly, I dissent and would reverse the trial court.

---

medical report indicates that Lauren sustained multiple lacerations of the face, which required sutures and has left a 15 × 4 mm scar on the left cheek at the junction of the eyelid and the cheek. Lauren also has a 10 × 2 mm scar lateral and below the left cheek. Both these scars are markedly noticeable from a distance of 6 feet. Further cosmetic surgery is recommended to reduce the deformity of the scars, but the report advises that anticipated scarring would be permanent.

7. The Eritanos also claim that Sama "attacked" a human being, making her a dangerous dog under subsection 3. "Attack" is defined as "the deliberate action of a dog, whether or not in response to a command by its owner, to seize with its teeth or to pursue any human, animate or inanimate object, with the obvious intent to destroy, kill, wound, injure, or otherwise harm the object of its action." 3 P.S. § 459-501-A. Nothing in the record indicates that Sama had a deliberate intention to bite Lauren, or even to injure her. Rather, the record indicates that Sama accidentally injured Lauren in an attempt to reach the chicken Lauren was holding near her face. I would also hold that Sama is not a dangerous dog under this subsection.