Betty Messa, Plaintiff-Appellee, v. James Sullivan, Keyman's Club, a Not for Profit Corporation, Defendants-Appellants.

Gen. No. 49,893.

First District, First Division.
July 30, 1965.
Rehearing denied September 7, 1965.

Lord, Bissell & Brook, of Chicago (Richard E. Mueller and John F. O'Meara, of counsel), for appellants.

Lowell Myers, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

Betty Messa brought this action against James Sullivan, Helen Sullivan and the Keyman's Club, an Illinois not for profit corporation, to recover damages for the bodily injuries which she sustained as the result of being bitten by the defendants' dog. The complaint was based on two theories: first, a common law action for the keeping of a vicious animal and, second, an action based on what is commonly known as the "Dog Bite Statute" (Ill Rev Stats 1963, c 8, § 12d). The parties waived a jury and the case was tried by the court. On the common law count, the trial court held for the defendants because he found that the plaintiff was contributorily negligent. No appeal has been taken from the judgment entered on that issue. On the statutory count, however, the court concluded that the plaintiff should recover and therefore he entered judgment awarding the plaintiff damages only against James Sullivan and the Keyman's Club in the amount of $3,000. From this judgment these two defendants appeal. They contend that the plaintiff failed to prove, as she was required to prove in order to recover under the statute, that she was lawfully on the defendants' premises and that she did not provoke the dog to attack. Alternatively the defendants contend that the amount of the damage award is not supported by the evidence.

The plaintiff suffered her injuries in the Keyman's Club building, 4721 West Madison Street in the City of Chicago. Located on the lower level and on the first and second stories of this building were the following: a bowling alley, a barber shop, a cocktail lounge, banquet and meeting rooms, a ballroom and various other businesses and offices. A labor union office occupied the third floor and the fourth floor was vacant. James Sullivan, the president of the Club

and the manager of its building for over twenty years, and his wife, Helen, occupied the fifth floor as their residence. No other use was made of the fifth floor. The Sullivans' apartment contained a safe in which the receipts from the operation of the building were kept. In addition, the apartment contained the defendants' furniture, personal property and their three-year-old German Shepherd dog, named "K. C.," which was kept there to protect the Club's property in the apartment. The various businesses located in the building were advertised by signs on the exterior of the structure and on a building directory which was located in the building lobby. There were, however, no notices anywhere that the fifth floor was used as a residence and not for commercial or business purposes.

All the floors of the building were served by an automatic elevator which could be reached on the ground floor by entering the building from Madison Street and by walking through the building lobby past the building office, which was located on the left of the lobby as one entered the building.

The plaintiff and the defendant, James Sullivan, testified concerning the events which occurred on the day in question. The plaintiff, who was a deaf mute, testified that at about two o'clock on the afternoon of June 12, 1961, she entered the defendants' building for the purpose of selling printed cards depicting the deaf and dumb alphabet. She said that this was the first time she had been in the building; that as she walked through the lobby she saw a woman at a telephone switchboard in the building office; that she entered the elevator and rode it to the fifth floor. When she got to that floor, the door on the elevator itself opened automatically. The plaintiff said that before she could step out of the elevator she had to manually open a second door which swung outward. She opened this door, which she said was heavy. She

389

stepped out into the fifth floor hall and turned to the left where there was a door. At this point the defendants' dog ran out of the door and jumped on the plaintiff. She testified: ". . . the dog bit me on the leg, and he bit me on the body, and he bit me on the arm, and I tried to cover my face. And the dog was big, and the dog was bigger than I was, and he was on top of me, and three times he bit me." The plaintiff stated that she finally managed to get back to the elevator and to ride down to the lobby where she told the woman at the switchboard what had happened.

During her testimony, the plaintiff was shown plaintiff's exhibit number one, a picture of a sign reading in large letters:

WARNING
KEEP OUT
VICIOUS
POLICE DOGS
INSIDE

She identified the exhibit as a picture of a sign which was posted on the manually operated elevator door which swung outward into the fifth floor hall. However, she denied having seen the sign because, in her words, ". . . the door was so heavy. I was pushing the door, it was a sliding door, and I did not see the sign."

Concerning her injuries, the plaintiff identified two exhibits as accurate pictures of the large marks and wounds inflicted by the dog on her leg, on her right side and on her right arm. The plaintiff testified that the bites left "holes" in her arm, that she felt pain for about two months after the occurrence and that she could not sleep for two weeks after the events in question.

The defendant, James Sullivan, testified that on the day in question he and an office girl were in the build-

ing office; that he observed the plaintiff walk into the lobby and proceed directly to the elevator without looking at the directory; that he saw the plaintiff board the elevator; and that he noticed the elevator go to the fifth floor. He said that the door on the elevator itself opened automatically; that when this door opened on the fifth floor, there was a second door which must be opened outward by hand to gain entrance to the hall; and that a thirty inch high sign warning of the presence of vicious dogs was posted on this manually operated door so that the bottom of the sign was about three and one-half to four feet from the floor. He also stated that the door to his apartment on the fifth floor was to the right of the elevator door about fifteen feet down the hall. The defendant testified further that he saw the plaintiff after she came down from the fifth floor; that he tried to administer first-aid for the scratches on the plaintiff's arm; and that he observed a tear in her dress. In his discovery deposition, the defendant testified that there was no sign in the elevator itself regarding vicious dogs and that the manually operated elevator door on the fifth floor could be locked by a key, but that it was unlocked on the day of the occurrence.

■ The "Dog Bite Statute" with which this appeal is principally concerned provides:

> If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog. The term "dog" includes both male and female of the canine species. (Ill Rev Stats 1963, c 8, § 12d.)

■■■■■■

This court, in Beckert v. Risberg, 50 Ill App2d 100, 199 NE2d 811, set forth the four elements of an action under this statute as follows:

(1) injury caused by a dog owned or harbored by the defendant;
(2) lack of provocation;
(3) peaceable conduct of the person injured; and
(4) the presence of the person injured in a place where he has a legal right to be.

There is no dispute that the plaintiff was bitten by a dog owned by the defendants and hence there is no question concerning the first element above. The defendants contend that the other elements are not satisfied, however, because the plaintiff's entry onto the fifth floor past a large sign warning her of the presence of the dog which bit her constituted an unlawful entry by the plaintiff and constituted provocative behavior on her part.

■■ We do not agree that the plaintiff was not lawfully on the defendants' premises. From all indications on the exterior of the defendants' building, in its lobby and on the inside of the elevator cab itself, people like the plaintiff could only surmise that the entire building was devoted to business purposes and that it was intended that they should come there on business. No notices anywhere indicated that any part of the premises was used as a private residence. It is clear, therefore, that when she entered the building, crossed its lobby, entered the elevator and rode it to the fifth floor, the plaintiff was lawfully on the premises. In addition, we believe that she was also lawfully on the premises when she entered the fifth floor hall where she was attacked. Persons entering the building and riding its elevator would have no reason to believe that the fifth floor was used for residential purposes or that vicious dogs were kept there. The sole warning to this

effect was posted in a place where it could be seen only split seconds before one would enter the danger area and only at a time when the elevator passenger would be concerned with pushing open the heavy door in order to step into the hall and continue on with his business there. We agree with the trial court that under these circumstances the warning sign was in the wrong location, that it did not give adequate warning of the danger and that hence the sign gives no grounds for holding that persons who enter the hall have no legal right to be there.

The cases primarily relied on by the defendants are distinguishable on their facts and are not applicable here. In Fullerton v. Conan, 87 Cal App2d 354, 197 P2d 59, the California District Court of Appeal affirmed a judgment for the defendant in a case brought by a five-year-old child to recover for injuries she received when bitten by the defendant's dog. She had sued under the California "Dog Bite Statute" which, like our own statute, required that the plaintiff lawfully be on the dog owner's premises. In that case, however, unlike the present case, it appears that the child had been given a direct, oral instruction not to go into the yard where the dog was. In another California dog bite case, Gomes v. Byrne, 51 Cal2d 418, 333 P2d 754, the court affirmed a judgment for the defendant. That case is not like the case at bar because there plaintiff saw and heard the dog before he entered the yard where the dog was kept. We do not believe that the other cases cited by the defendants are controlling and it would serve no useful purpose to extend this opinion by discussing them at length.

■ Next the defendants argue that the plaintiff was guilty of provocative behavior at the time she was attacked. They reason that the plaintiff approached the apartment and the dog without giving a warning as to the nature of her visit; that this act

represented a threat to the security of the apartment; that the dog resented this threat and that the plaintiff should have known such conduct would be likely to provoke a dog to attack. We do not agree. Here the plaintiff had a legal right to be in the hallway. Her only actions at that point consisted of stepping off the elevator and walking a short distance toward the defendants' apartment door. We do not believe that the term "provocation" in the statute was intended to apply to a situation like this and thereby relieve from responsibility the owner of a vicious dog, which is specifically kept for protection, merely because the dog interprets the visitor's movements as hostile actions calling for attack.

██ ██ Finally the defendants contend that the award of $3,000 is not supported by the evidence and that it is excessive. Our courts have consistently held that a damage award to a plaintiff in a personal injury case will not be set aside unless it is so palpably excessive as to indicate passion or prejudice on the part of the trier of fact (Holsman v. Darling State Street Corp., 6 Ill App2d 517, 128 NE2d 581, and cases there cited; Eizerman v. Behn, 9 Ill App2d 263, 132 NE2d 788; Lau v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63) or unless it is so large as to shock the judicial conscience (Barango v. E. L. Hedstrom Coal Co., 12 Ill App2d 118, 138 NE2d 829; Smelcer v. Sanders, 39 Ill App2d 164, 188 NE2d 391; Myers v. Nelson, 42 Ill App2d 475, 192 NE2d 403). The record shows that the plaintiff sustained multiple wounds on her body, arms and legs and that she suffered great pain. We find nothing here to indicate passion or prejudice on the part of the trial judge and we do not believe that under the circumstances the award can be considered shocking to the judicial conscience. Hence we

cannot substitute our judgment for that of the trial judge and set aside the award.

The judgment should be affirmed.

Affirmed.

MURPHY and KLUCYZNSKI, JJ., concur.