Docket No. 107192.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

WEDGE C. LAZENBY *et al*., Appellants, v. MARK'S
CONSTRUCTION, INC., *et al.*, Appellees.

*Opinion filed January 22, 2010.*

JUSTICE BURKE delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride,
Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

In the early morning hours of August 30, 2001, a fire broke out in
the basement of a Park Ridge, Illinois, residence which was under
construction. Firefighters Wedge C. Lazenby (Lazenby) and Derek R.
Decker (Decker) (collectively hereinafter referred to as plaintiffs)
responded to the fire. While attempting to locate the source of the
fire, Lazenby fell through an unprotected floor opening to the cement
basement below and was severely injured. Decker was injured when
he fell from a ladder while attempting to rescue Lazenby. Plaintiffs
filed suit in the circuit court of Cook County against Mark's
Construction, Inc. (Mark's Construction), the general contractor
working on the home.

The trial court entered summary judgment against Decker, finding that Mark's Construction had no duty to prevent Decker's injuries. Following a trial on Lazenby's claims, the trial court entered judgment on the jury's general verdict for Mark's Construction. Both plaintiffs appealed, and the appellate court affirmed the trial court's judgment. No. 1–06–2969 (unpublished order under Supreme Court Rule 23).

The issues presented in this appeal are: (1) whether section 9f of the Fire Investigation Act (Act) (425 ILCS 25/9f (West 2004)) applied retroactively to Decker's claims; and (2) whether the trial court erred in failing to enter a judgment notwithstanding the verdict (judgment *n.o.v.*) or order a new trial for Lazenby. For the reasons that follow, we affirm the appellate court.

## BACKGROUND

On December 28, 2001, plaintiffs filed a complaint based on negligence against Mark's Builders, Inc., and Marek Kolbiarz, individually and doing business as Mark's Builders, Inc. (later corrected to Mark's Construction, Inc., hereinafter referred to as Mark's Construction). On August 29, 2003, plaintiffs filed their first amended complaint, alleging construction negligence and premises liability and adding Michael Izrael, the owner of the house, as a defendant.[1]

In response, Mark's Construction filed motions for summary judgment, alleging that plaintiffs' claims were barred by the common law "fireman's rule" because their injuries resulted from risks normally associated with firefighting duties, and that plaintiffs' injuries were unforeseeable.

---

[1]Prior to trial, the trial court entered summary judgment for Izrael and against Lazenby on the basis that Mark's Construction assumed sole responsibility for the safety of the job site. The trial court later severed from this case all claims against Izrael and State Farm Mutual Automobile Insurance Company (State Farm), which represented Izrael during the proceedings. Izrael thus is not a party to this appeal. Kolbiarz was voluntarily dismissed as an individual defendant prior to trial.

On April 26, 2004, plaintiffs filed their second amended complaint, the complaint at issue in this appeal. Plaintiffs alleged 12 counts based on theories of construction negligence (counts I and II); premises liability (counts III and IV); violation of statutory duty (counts V and VI); willful and wanton construction (counts VII and VIII); willful and wanton premises liability (counts IX and X); and willful and wanton violation of statutory duty (counts XI and XII).[2]

On July 28, 2004, the trial court granted summary judgment for Mark's Construction as to Decker's claims in counts II, IV, and VI, finding that under the fireman's rule, Mark's Construction had no duty to Decker for his injuries. The court rejected Decker's argument that section 9f of the Act retroactively imposed a duty on Mark's Construction. 425 ILCS 25/9f (West 2004) (landowner or occupier has a duty of reasonable care to a firefighter who is injured due to the lack of maintenance of the premises in the course of responding to a fire). All of Decker's claims were thus dismissed or disposed of by summary judgment prior to trial. The summary judgment motion directed at Lazenby was denied because the court held that the fireman's rule did not apply to Lazenby's injuries.

Lazenby and Mark's Construction proceeded to a jury trial on December 2, 2005. Kolbiarz testified as an adverse witness for the plaintiff and also on his own behalf. He testified that, on the evening of August 29, 2001, he left the residence at approximately 6:30 p.m. after the other workers had left. The stairway to the basement was not yet installed, leaving an open hole in the floor measuring approximately 16 feet by 4 feet. Kolbiarz estimated that the basement floor was about 10 feet below the opening. He admitted that the unprotected hole was a safety hazard. Although a guardrail previously had been installed around the hole, the guardrail was removed that day to permit drywall work and Kolbiarz decided to wait until the next morning to replace the guardrail because the house was locked and he did not expect anyone else to enter the house during the night. When asked on cross-examination why he did not buy a piece of plywood at

---

[2]Counts V and XI, asserted by Lazenby, and counts VIII, X, and XII, asserted by Decker, were dismissed with prejudice pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)) and are not at issue in this appeal.

a lumber store to cover the hole, he replied that the store was closed. Kolbiarz further testified that an orange construction fence surrounded the outside of the residence.

Lazenby testified on his own behalf. He stated that he and his partner, firefighter Karen Carrillo, arrived at the scene in a fire department vehicle. He stated that he received a radio order from his acting battalion chief, Alvin Portell, to "force entry" into the residence. Accordingly, he forced the door open with an axe and entered the residence with Carrillo. Members of the engine crew followed them inside with a hose. The house was filled with smoke, limiting visibility to approximately six to nine inches. According to Lazenby, Lieutenant Plach said that he was going upstairs to look for the fire and Lazenby responded that he would look for the fire in the basement. While crawling on the floor with a flashlight to search for the seat of the fire, Lazenby felt an object with his hand which he thought was the tread and riser of a stair. The object gave way, and he fell head first through an opening in the floor. He heard a loud metallic crash, which he assumed was caused by the object hitting the floor. A folding ladder came down through the hole but was pulled back because it was too small. Decker then fell through the hole, on top of Lazenby. Both firefighters used a second ladder to escape from the hole.

Lazenby testified that the "two-in, two-out" policy is a fire department guideline that is not always followed to the letter. It states that for every two firefighters who enter a building, two firefighters stand at the ready to go in if something happens to them. Lazenby admitted that because he and Carrillo were in the first vehicle on the scene, ordinarily they would stay outside the building and man the backup line as the "two-out" company. When asked if he violated any principles of the two-in, two-out guideline, Lazenby answered that he did not. He testified that the only order he received was to force entry. Lazenby further acknowledged that he was trained to sound the floor for hazards by using a tool such as an axe or a pipe pole, but that he had neither of these tools with him at the time of the accident.

Plaintiff's safety expert, Dennis Puchalski, testified that the protection of open holes in floors is an important safety concern on a construction site. In this instance, the unprotected floor opening violated construction safety customs and practice and violated

guidelines issued by the Occupational Safety and Health Administration (OSHA) and by various construction industry associations. After being removed, the guardrails should have been reinstalled to ensure proper site safety. Puchalski testified that "[t]here is never a time-out as far as the protection*** at all points in time you protect the opening." He stated that if proper protective devices had been used, Lazenby's fall and injury would not have occurred.

At the close of plaintiff's case in chief, Lazenby moved for a directed finding on the issue of Mark's Construction's negligence in failing to cover or protect the floor opening and on the issue of proximate cause. The trial court denied the motion.

Firefighter Carrillo testified on behalf of the defense that she did not hear any orders to "force entry" into the residence or to search for the seat of the fire. Carrillo followed Lazenby inside the residence, followed by the line crew with the hose. As Lazenby was entering the house, he was yelling, "Let's go, let's go." Carrillo heard the acting lieutenant yell, "Wait for the hose." Carrillo yelled to Lazenby, "Wedge, wait. Wedge, wait." Lazenby then fell through the hole. Carrillo did not hear Lazenby say anything about trying to find the basement.

Fire Lieutenant Alvin Portell also testified for the defense. Portell was the shift commander and the highest ranking officer at the fire scene. He stated that he never gave Lazenby an order to enter the residence or to search for the seat of the fire, nor did any other officer order Lazenby to enter the building. Portell stated that an order to "force entry" is to force open a door, but not necessarily to enter a building. Lazenby engaged in "freelancing" and violated the chain of command by entering the building without receiving orders to do so. Portell explained that "freelancing" is a term of art which means that a firefighter does things on his own without an order and without communication with others, putting themselves and other firefighters in danger. Both Portell and Carrillo further testified that when they arrived at the scene they noticed that the house was obviously under construction.

Defense expert witness John Agosti testified that Lazenby would have been in violation of the "buddy system" by proceeding to find the seat of the fire without voice contact or physical contact with Carrillo. Agosti stated that proceeding into a building with only a flashlight

would have been a violation of standard practice and training for a firefighter. He further testified that Lazenby's injuries were the direct result of his unauthorized entry into the building and that, had Lazenby not been freelancing, he would not have fallen into the hole.

At the trial's conclusion, the trial court instructed the jury on the affirmative defense of comparative negligence. The jury returned a general verdict on Verdict Form C in favor of Mark's Construction and against Lazenby, and the court entered judgment on the verdict. Plaintiffs filed a posttrial motion, with Lazenby seeking a judgment *n.o.v.* or, in the alternative, a new trial, and Decker seeking a trial. The trial court denied plaintiffs' posttrial motion in full and stated that "there is no just reason to delay enforcement or appeal of this order." 210 Ill. 2d R. 304(a).

On appeal, the appellate court upheld the trial court's entry of summary judgment against Decker. The court held that, while the legislature intended for section 9f of the Act to apply retroactively, due process concerns under the Illinois Constitution prohibit the retroactive application of section 9f to this case. The appellate court upheld the trial court's refusal to direct a verdict, enter a judgment *n.o.v.*, or grant a new trial to Lazenby. No. 1–06–2969 (unpublished order under Supreme Court Rule 23). Accordingly, the appellate court affirmed the trial court's judgment. We allowed plaintiffs' petition for leave to appeal (210 Ill. 2d R. 315).

## ANALYSIS
### I. Retroactive Application of Section 9f

At the outset, we note that several issues raised by the plaintiffs in their brief before this court have been forfeited because plaintiffs failed to raise them in the circuit court, appellate court, or in their petition for leave to appeal. These include Lazenby's argument that the trial court erred in failing to direct a verdict on the issue of proximate cause; Decker's argument that the fireman's rule does not apply to his willful and wanton conduct claims; and Decker's argument that the fireman's rule does not apply because his injuries resulted from the narrow stairwell opening or a cardboard box rather than from the fire itself. See 155 Ill. 2d R. 366(b)(2)(iii) ("A party may not urge as error on review of the ruling on the party's post-trial motion any point,

ground, or relief not specified in the motion"); *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 349 (1980) (an appellant must present his contentions with specificity in a posttrial motion to preserve them for review); *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430-31 (2006) (issues raised for the first time on appeal are forfeited); *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 320-21 (2008) (failure to raise an issue in a petition for leave to appeal forfeits the issue on the merits). Finding those issues forfeited, we will not address them on their merits.

Turning to the issue properly raised by Decker, we must decide whether section 9f of the Act applied retroactively to impose a duty on Mark's Construction. Decker contends that the legislature expressly intended section 9f to apply to causes currently pending in the courts. Since his claims were pending in the trial court at the time of the statute's enactment, Decker asks this court to apply the statute to this case and to reverse the trial court's entry of summary judgment against him. The appellate court in the case at bar rejected Decker's argument and held that applying section 9f retroactively would "impose a new duty on defendants that did not exist two years prior to section 9f's enactment at the time of Decker's injuries," thereby violating defendant's due process rights. No. 1–06–2969 (unpublished order under Supreme Court Rule 23).

This matter comes before us in the context of a motion for summary judgment. Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2004). Our review of the circuit court's grant of summary judgment is *de novo*. *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 661 (2005). We also review *de novo* the constitutionality of a statute and whether a party's constitutional rights have been violated. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334 (2006).

Section 9f of the Act became effective on July 22, 2003. It states:

> "The owner or occupier of the premises and his or her agents owe fire fighters who are on the premises in the performance of their official duties conducting fire

investigations or inspections or responding to fire alarms or actual fires on the premises a duty of reasonable care in the maintenance of the premises according to applicable fire safety codes, regulations, ordinances, and generally applicable safety standards, including any decisions by the Illinois courts. The owner or occupier of the premises and his or her agents are not relieved of the duty of reasonable care if the fire fighter is injured due to the lack of maintenance of the premises in the course of responding to a fire, false alarm, or his or her inspection or investigation of the premises.

     ***

*This Section applies to all causes of action that have accrued, will accrue, or are currently pending before a court of competent jurisdiction, including courts of review.*" (Emphasis added.) 425 ILCS 25/9f (West 2004).

In assessing whether a statute should be applied retroactively, this court has adopted the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330-32 (2006), citing *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37-39 (2001). This court recently summarized the *Landgraf* test as follows:

"The threshold inquiry is whether the legislature has expressly prescribed the temporal reach of a statute. If it has, the expression of legislative intent must be given effect *absent a constitutional prohibition*. If, however, the statute contains no express provision regarding its temporal reach, the court must determine whether the new statute would have retroactive effect, keeping in mind the general principle that prospectivity is the appropriate default rule. In making this determination, a court will consider whether retroactive application of the new statute will impair rights a party possessed when acting, increases a party's liability for past conduct, or impose new duties with respect to transactions already completed. If retrospective application of the new law has inequitable consequences, a court will presume that the statute does not govern absent clear legislative intent favoring such a result." (Emphasis added.) *John Doe A. v. Diocese of Dallas*, 234 Ill.

-8-

2d 393, 405 (2009), citing *Allegis*, 223 Ill. 2d at 330-31 (citing *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 262, 114 S. Ct. at 1505, and *Commonwealth Edison*, 196 Ill. 2d at 38).

In the statute at issue, the legislature clearly expressed its intent that the statute be given retroactive effect. Section 9f states that "[t]his Section applies to all causes of action that have accrued, will accrue, or are currently pending before a court of competent jurisdiction, including courts of review." 425 ILCS 25/9f (West 2004). At the time of the statute's enactment, this case was before the circuit court. Accordingly, pursuant to *Landgraf*, we must follow the legislature's intention to apply the statute to this case unless the constitution prohibits us from doing so. *Allegis*, 223 Ill. 2d at 332.

Two decisions from this court are instructive on the constitutional implications of the retroactive application of a statute. In *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1998), an amendment to section 3–108 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3–108 (West 1994)) allowing claims of willful and wanton misconduct against local public entities and employees took effect almost four years after the plaintiff's cause of action accrued. This court refused to apply the amendment retroactively because the defendant school district had a "vested right" to the total immunity provided by the unamended statute. *Henrich*, 186 Ill. 2d at 404. We defined a vested right as " 'a complete and unconditional demand or exemption that may be equated with a property interest,' " protected from legislative interference by the due process clause of the Illinois Constitution. *Henrich*, 186 Ill. 2d at 404, quoting *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 291 (1996). A " 'vested ground of defense is as fully protected from being cut off or destroyed by an act of the legislature as is a vested cause of action.' " *Henrich*, 186 Ill. 2d at 404-05, quoting 16A C.J.S. *Constitutional Law* §260(b), at 91 (1984). The school district's unconditional immunity under the unamended statute did not depend on the entry of a judgment. Therefore, "[t]he amended section 3–108 [could] not reach back and take that vested right away, impose a new duty on the school district, and breathe life into this previously barred claim." *Henrich*, 186 Ill. 2d at 405.

In our subsequent decision in *Commonwealth Edison*, we held that applying certain tax rate amendments to tax levies that were adopted by Will County shortly before the effective date of the amendments did not violate the taxpayer's due process rights under the Illinois Constitution (Ill. Const. 1970, art. I, §2). *Commonwealth Edison*, 196 Ill. 2d at 44-45. In our analysis of the retroactivity issue, we held that the *Landgraf* approach is "the appropriate means of determining when new legislation should be applied to existing controversies." *Commonwealth Edison*, 196 Ill. 2d at 39.

Although we "switched the focus of the first step of the retroactivity analysis from 'vested rights' to legislative intent" (*John Doe A*., 234 Ill. 2d at 411), we nevertheless held that *Henrich* "remains relevant *** insofar as it defines those interests that are protected from legislative interference by the due process clause of the Illinois Constitution." *Commonwealth Edison*, 196 Ill. 2d at 47. We said that our holding in *Henrich*, that the school district's tort immunity defense had "vested," and thus was protected from judicial interference, was "simply a specific example of the general maxim that 'settled expectations honestly arrived at with respect to substantial interests ought not to be defeated.' " *Commonwealth Edison*, 196 Ill. 2d at 48, quoting *Moore v. Jackson Park Hospital*, 95 Ill. 2d 223, 241-42 (1983) (Ryan, C.J., concurring, joined by Underwood and Moran, JJ.).

We distinguished the facts in *Henrich* from those in *Commonwealth Edison* in two important respects. First, the statutory amendment in *Henrich* became effective almost four years after the plaintiff's cause of action arose, while the period of retroactivity in *Commonwealth Edison* was only six weeks. Second, applying the amended statute to the claim in *Henrich* would have meant "resurrecting a claim that had previously been barred in its entirety." In contrast, the taxpayer was aware of the tax itself prior to the tax rate amendment and did not have a vested right in the rate of taxation. *Commonwealth Edison*, 196 Ill. 2d at 48-49.

The appellate court in the instant case and in *Randich v. Pirtano Construction Co.*, 346 Ill. App. 3d 414 (2004), relied on *Commonwealth Edison* to find that section 9f could not constitutionally be applied to the plaintiffs' claims. In *Randich*, the plaintiff was an emergency medical technician (EMT) who was injured

in an explosion when he responded to the scene of a leaking gas main. The appellate court found that the fireman's rule prevented the plaintiff's recovery for injuries he incurred while responding to the situation giving rise to the emergency. *Randich*, 346 Ill. App. 3d at 423; see also *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 527 (1995) ("[The fireman's] rule provides that an owner or occupier of land must exercise reasonable care to prevent injury to firemen that might result from a cause independent of the fire, but has no duty to prevent injury resulting from the fire itself").

The plaintiff filed a petition for rehearing asserting that the newly enacted section 9f applied retroactively to his claims because the statute expressly states that it applies to pending causes of action. *Randich*, 346 Ill. App. 3d at 426-27. In a supplemental opinion, the *Randich* court concluded that section 9f could not be applied retroactively to the defendants to impose a duty upon them that did not previously exist. The court held that the defendants' due process rights would be violated by retroactively applying section 9f to the plaintiff's claim. *Randich*, 346 Ill. App. 3d at 430, citing *Commonwealth Edison*, 196 Ill. 2d at 48-49. The court held that the defendants had a "vested right to total immunity from the prosecution of plaintiff's negligence claim." *Randich*, 346 Ill. App. 3d at 430, citing *Henrich*, 186 Ill. 2d at 404; see also *Harraz v. Snyder*, 283 Ill. App. 3d 254, 256-57 (1996) (applying a vested rights analysis where the vested right was established from the common law and later taken away by a statute). The court further held that imposing a new duty on the defendants more than four years after the accident occurred would unfairly resurrect a claim that was once barred. *Randich*, 346 Ill. App. 3d at 430.

We agree with the reasoning of the *Randich* court and hold that section 9f may not be constitutionally applied to Decker's claims. A retroactive change in the law that imposes a new duty is "prohibited as a violation of the due process clause of the Illinois Constitution, and the legislature is without authority to enact such a law even if that is its express intention." *Valdez v. Zollar*, 281 Ill. App. 3d 329, 333 (1996), citing *Armstead*, 171 Ill. 2d at 290. The statute at issue imposes a duty of reasonable care on landowners and occupiers to firefighters who are injured due to the lack of maintenance of the premises in the course of responding to fires. The parties agree that

the duty did not exist prior to enactment of the statute. Under the fairness considerations of *Commonwealth Edison*, applying section 9f retroactively would disturb Mark's Construction's "settled expectations" and impose a duty that did not previously exist.

The immunity provided by the fireman's rule is similar to the immunity found to be a "vested right" in *Henrich*. The fireman's rule "goes to the threshold question of whether an owner or occupier of land has any duty to fire fighters injured while fighting a fire on his premises. Where the rule applies, it means that no duty is imposed by the law." *Vroegh*, 165 Ill. 2d at 530, citing *Court v. Grzelinski*, 72 Ill. 2d 141, 148 (1978). "[T]here is no point at which a defendant subject to the 'fireman's rule' can be said to have been even potentially liable for the injury or wrongful death. There could never have been a meritorious claim because there never was a duty that was breached." *Vroegh*, 165 Ill. 2d at 531. At the time of Decker's injuries, Mark's Construction had a valid expectation under the law that no duty existed to firefighters injured in the course of their ordinary firefighting duties. The period of retroactivity in this case, although of lesser importance, also weighs in favor of finding no retroactivity. Section 9f was enacted almost two years after Decker was injured, a much longer period of time than the six weeks in *Commonwealth Edison*. Retroactively imposing liability on Mark's Construction for failing to fulfill a duty it did not have at the time of Decker's injury is contrary to notions of due process in the Illinois Constitution. Accordingly, we affirm the entry of summary judgment against Decker.

## II. Motion for Judgment *n.o.v.* or New Trial

Lazenby contends that the trial court erred in failing to enter judgment *n.o.v.* or order a new trial based on the court's prejudicial error in denying his motion for a directed finding on defendant's negligence. In support, Lazenby cites the evidence at trial that Mark's Construction failed to provide fall protection for the hole in violation of safe standards and practices; Kolbiarz's testimony that he left the hole unprotected when he left work for the evening and that he knew the hole was a safety hazard; and plaintiff's expert's testimony that Mark's Construction's failure to provide fall protection violated

construction safety customs and practices and violated OSHA and other guidelines.

A directed verdict or judgment *n.o.v.* should be granted only when "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). Judgment *n.o.v.* is inappropriate if "reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented." *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 351 (1995). We review *de novo* the trial court's decision denying Lazenby's motion for judgment *n.o.v. York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006).

In this case, even before the defense presented its case in chief, the jury heard evidence that both Lazenby and Mark's Construction were negligent. Although Lazenby disputed some of the evidence of his negligence, a reviewing court "should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way. [Citations.]" *Maple v. Gustafson*, 151 Ill. 2d 445, 452-53 (1992). Given the conflicting evidence at trial, particularly the significant evidence of Lazenby's negligence presented by the defense, we cannot say that all of the evidence, viewed favorably to Mark's Construction, "so overwhelmingly favor[ed] [Lazenby] that no contrary verdict based on that evidence could ever stand." *Pedrick*, 37 Ill. 2d at 510. Thus, we conclude that the trial court did not err in refusing to grant a directed verdict or judgment *n.o.v.*

The standard of review is different with regard to Lazenby's posttrial motion for a new trial. On a motion for a new trial, the court, after weighing the evidence, will set aside the verdict and order a new trial " 'if the verdict is contrary to the manifest weight of the evidence.' " *Maple*, 151 Ill. 2d at 454, quoting *Mizowek v. De Franco*, 64 Ill. 2d 303, 310 (1976). A verdict is against the manifest weight of the evidence " 'where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.' [Citations.]" *Maple*, 151 Ill. 2d at 454. We will not reverse a court's ruling on a

motion for new trial unless it is affirmatively shown that the trial court clearly abused its discretion. *Maple*, 151 Ill. 2d at 455.

Lazenby has failed to meet his burden to establish his entitlement to a new trial. The jury returned a general verdict for Mark's Construction and did not specify any findings of fact. Lazenby did not submit a special interrogatory as to the basis of the jury's finding. The jury's verdict, therefore, is silent as to the jury's reasons for finding in favor of the defendant. *Guy v. Steurer*, 239 Ill. App. 3d 304, 307 (1992). " 'When there is a general verdict and more than one theory is presented, the verdict will be upheld if there was sufficient evidence to sustain either theory, and the [moving party], having failed to request special interrogatories, cannot complain.' "*Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 492 (2002), quoting *Witherell v. Weimer*, 118 Ill. 2d 321, 329 (1987). The requirement that a complaining party request a special interrogatory applies both to a complaining plaintiff and to a complaining defendant. *Krklus v. Stanley*, 359 Ill. App. 3d 471, 479 (2005). See also *Strino v. Premier Healthcare Associates, P.C.*, 365 Ill. App. 3d 895, 904 (2006) (where a defendant raises two or more defenses, under the "two issue" rule, a general verdict creates a presumption that the jury found in favor of the defendant on every one of the defenses).

In this case, the jury was instructed to fill out Verdict Form C if it found *either* (1) for the defendant and against the plaintiff, *or* (2) "that plaintiff's contributory negligence was more than 50% of the total proximate cause of the injury or damage for which recovery is sought." The jury was further instructed that "if the plaintiff's contributory negligence is more than 50% of the total proximate cause of the injury or damage for which recovery is sought, the defendant shall be found not liable." The jury returned a general verdict on Verdict Form C for Mark's Construction and against Lazenby.

The general verdict rendered by the jury creates a presumption that the jury found in favor of Mark's Construction on every defense raised, including that Lazenby was greater than 50% negligent, and thus barred from any recovery. See *Dillon*, 199 Ill. 2d at 492; *Guy*, 239 Ill. App. 3d at 307.

Based on our review of the record, we find there was clearly sufficient evidence to sustain the verdict on the theory of comparative negligence. The jury was presented with evidence that Lazenby

violated the chain of command and the department's policies by entering the house without orders or authorization. The evidence further showed that Lazenby continued into the house before a charged hose line had arrived, ignored a direct order to wait, and failed to use an axe or other tool to sound the floor in front of him. Lazenby's superior officer and the defense expert both testified that Lazenby violated the department's policies and breached the standard of care by "freelancing" and that, had Lazenby not been freelancing, he would not have been injured. The evidence was sufficient for the jury to have concluded Lazenby was more than 50% negligent, thereby barring any recovery. Because the jury's verdict was not against the manifest weight of the evidence, we conclude that the trial court did not abuse its discretion in refusing to grant a new trial.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*