# Illinois Official Reports

## Appellate Court

> ### *Claffey v. Huntley*, 2021 IL App (1st) 191938

| | |
|---|---|
| Appellate Court Caption | KEVIN CLAFFEY, Plaintiff-Appellant, v. VIRGINIA HUNTLEY and MARK HUNTLEY, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>No. 1-19-1938 |
| Filed | June 17, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-4613; the Hon. Thomas V. Lyons II, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Patrick J. Giese and Patrick M. Grim, of Tomasik Kotin Kasserman, of Chicago, for appellant.<br><br>Alexandra K. Hunstein, of Law Offices of Meachum, Boyle, Trafman, Marek & Parker, of Chicago, for appellees. |
| Panel | JUSTICE MARTIN delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff, Kevin Claffey, appeals a jury's verdict in favor of the owners of a dog that Claffey accused of biting him without provocation. Claffey, a letter carrier, after inserting his hand through the mail slot of defendants' front door, was bit on the hand. Claffey appeals the circuit court's orders denying his motion for directed verdict, motion for judgment notwithstanding the verdict, and motion for new trial, arguing there was no evidence for the jury to find the bite was provoked. As we find the evidence did not preclude a finding of provocation as a matter of law and the verdict was not against the manifest weight of the evidence, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3 Kevin Claffey brought this action with a jury demand seeking damages against Virginia and Mark Huntley after their dog, Chelsea, a 45-pound Labrador mix, bit Claffey on his right hand. Claffey, a United States Postal Service letter carrier, testified the bite occurred when he was delivering mail to the Huntleys' home in Glencoe, Illinois, on October 1, 2015. Just as he had done on many occasions over the 16 years that he was assigned to this route, Claffey parked his mail truck in front of the Huntleys' house and walked to the front door. He knew the Huntleys had two dogs and heard one barking from the back part of the driveway. The front door had a mail slot with two flaps, one on the outside and one on the inside of the door. The inner flap had a strong spring-loaded hinge that kept the flap shut unless pushed open. As Claffey wanted to prevent the inner flap from damaging pieces of mail, he placed his right hand through the slot to hold the inner flap open while he inserted the mail with his left hand. When he did so, Chelsea leapt up and bit his right hand. Claffey found himself in a "tug of war" for two or three seconds until he was able to pull his hand back from Chelsea's mouth. The top of Claffey's hand was ripped, and he was in excruciating pain. He then ran back to his truck and drove to the post office in Glencoe.

¶ 4 Claffey later sought medical attention. He received one stitch, was prescribed pain medication, and underwent physical therapy. For the first few months, Claffey experienced acute pain that he likened to being poked with a fire poker if he used his right hand to do anything, even basic tasks such as tying his shoes. Eventually, Claffey required surgery to repair a nerve in his finger.

¶ 5 At trial, Claffey testified the Huntleys' dogs would sometimes get excited when he delivered mail to their house. When he knew the dogs were present, Claffey would bundle the mail and leave it between the front and screen doors. He also testified that he could insert mail through the slot without placing his hand inside the house to hold the inner flap open and had done so before. But at other times, Claffey would place his hand through and hold the flap open.

¶ 6 Katherine Sweeney, an animal control officer for the Village of Glencoe, testified she was dispatched to the Glencoe post office on October 1, 2015. There, she encountered paramedics attending to Claffey. Claffey reported that the Huntleys' dog bit his hand when he placed it in the mail slot. Sweeney's written report noted that Claffey told her that he heard the dog barking before he placed his hand in the mail slot. After taking Claffey's report, Sweeney contacted Virginia. Virginia stated the dogs were in the house, she heard her dog barking, and then she heard the mail slot open. She did not learn Claffey had been bitten until Sweeney contacted her.

¶ 7        Virginia testified she was home at the time but was in the basement painting a room, so she did not see what happened. A veterinary technician, Jennifer Johnston, testified that Virginia brought Chelsea to the Green Bay Veterinary Hospital later that day and reported that Chelsea had bitten the mailman that morning.

¶ 8        After the close of evidence, Claffey moved for a directed verdict on liability, arguing that there was no evidence of provocation. The circuit court denied the motion, reasoning that "a reasonable jury could conceivably infer from the evidence in this case that the act of sticking his entire hand or a portion of his hand through the mail slot could be considered provocation of these dogs." Accordingly, the matter was submitted to the jury.

¶ 9        The court instructed the jury that Claffey had the burden on proving four propositions: that he sustained an injury caused by the Huntleys' dog; that he was conducting himself peaceably at the time; that he did not provoke the dog; and that he was in a place where he had a legal right to be. The court further instructed the jury:

> "The term 'provoked' means any action or activity, whether intentional or unintentional, which could reasonably be expected to cause a normal animal in similar circumstances to react in a manner similar to that shown by the evidence." See Illinois Pattern Jury Instructions, Civil, No. 110.04 (approved Dec. 8, 2011).

¶ 10       The jury returned a verdict finding in favor of the Huntleys and against Claffey. Claffey then filed a motion for judgment notwithstanding the verdict (judgment *n.o.v.*) and a motion for new trial. Both motions argued that there was no evidence of provocation. The circuit court denied both motions, and this appeal followed.

¶ 11       On appeal, Claffey argues that the circuit court erred in denying his motion for directed verdict and motion for judgment *n.o.v.*, as there was no evidence of provocation and he was entitled to judgment as a matter of law on liability. He, therefore, requests that we reverse the judgment and remand for a new trial on damages only. Alternatively, Claffey argues the circuit court erred in denying his motion for new trial because the lack of provocation renders the jury's verdict against the manifest weight of the evidence, and thus, he requests we vacate the judgment and remand for a new trial on both liability and damages.

¶ 12                                    II. ANALYSIS

¶ 13       Motions for directed verdicts and motions for judgments *n.o.v.*, although made at different times, raise the same questions and are governed by the same rules of law. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 n.1 (1992). A directed verdict or a judgment *n.o.v.* is properly entered in those limited cases where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Id.* at 453. Motions for directed verdicts and motions for judgment *n.o.v.* present questions of law, and therefore, our review is *de novo. Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37. *De novo* review means we consider these motions anew and conduct the same inquiry the trial court would. *Ryan v. Yarbrough*, 355 Ill. App. 3d 342, 346 (2005); *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). The standard for a directed verdict or judgment *n.o.v.* is high and not appropriate if " 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented.' " (Internal quotation marks omitted.) *Lawlor*, 2012 IL 112530, ¶ 37 (quoting *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006)). In ruling on these motions, a court does not weigh evidence nor consider credibility of witnesses; rather, the court only considers

- 3 -

the evidence and any inferences therefrom in the light most favorable to the nonmoving party. *Serrano v. Rotman*, 406 Ill. App. 3d 900, 908-09 (2011). Judgment should not be entered on either motion when "there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple*, 151 Ill. 2d at 454.

¶ 14 A motion for new trial is different. *Steed v. Rezin Orthopedics & Sports Medicine*, 2021 IL 125150, ¶ 44. On a motion for new trial, the court will set aside the jury's verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. *Id.* A verdict is contrary to the manifest weight of the evidence " 'where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary[,] and not based upon any of the evidence.' " *Id.* (quoting *Maple*, 151 Ill. 2d at 454). A reviewing court will not reverse the trial court's ruling on a motion for new trial " 'unless it is affirmatively shown that the trial court clearly abused its discretion.' " *Id.* (quoting *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 101 (2010)). An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Seymour v. Collins*, 2015 IL 118432, ¶ 41. We are also mindful that "[i]t is well established that, in an appeal from a jury verdict, a reviewing court may not simply reweigh the evidence and substitute its judgment for that of the jury." *Snelson v. Kamm*, 204 Ill. 2d 1, 35 (2003).

¶ 15 Claffey brought his claim pursuant to section 16 of the Animal Control Act (Act) (510 ILCS 5/16 (West 2012). Section 16 provides:

> "If a dog or other animal, without provocation, attacks, attempts to attack, or injures any person who is peaceably conducting himself or herself in any place where he or she may lawfully be, the owner of such dog or other animal is liable in civil damages to such person for the full amount of the injury proximately caused thereby." *Id.*

To recover under the Act for a dog bite, a plaintiff must prove (1) the defendant's dog caused an injury, (2) lack of provocation, (3) the injured person's conduct was peaceable, and (4) the injured person was in a place where they had a legal right to be. *Smith v. Pitchford*, 219 Ill. App. 3d 152, 154 (1991). Provocation is "any action or activity, whether intentional or unintentional, which would be reasonably expected to cause a normal dog in similar circumstances to react in a manner similar to that shown by the evidence." (Internal quotation marks omitted.) *Kirkham v. Will*, 311 Ill. App. 3d 787, 794 (2000). A plaintiff's subjective intent does not determine the issue. *Meyer v. Naperville Manner, Inc.*, 262 Ill. App. 3d 141, 149 (1994).

¶ 16 Claffey argues that the circuit court should have granted either his motion for directed verdict or motion for judgment *n.o.v.*, as his unimpeached, uncontradicted testimony that the Huntleys' dog bit his hand when he placed it through their mail slot could not, as a matter of law, constitute provocation and, therefore, he was entitled to judgment on liability. His brief states: "As a matter of law, mere presence of Mr. Claffey's hand in the mail slot cannot constitute provocation in Illinois." To support that proposition, Claffey cites Illinois appellate cases where courts found the plaintiff's conduct did not amount to provocation as a matter of law.

¶ 17 To be sure, Illinois courts have found "[m]ere presence on private property does not constitute provocation regardless of how the animal may interpret the visitor's movements."

*Smith*, 219 Ill. App. 3d at 154 (citing *Messa v. Sullivan*, 61 Ill. App. 2d 386 (1965)). Similarly, "[p]rovocation cannot be said to exist within the meaning of [the Act] where such unintentional stimuli as greeting or petting a dog result in the dog attacking the plaintiff viciously and the attack is out of all proportion to the unintentional acts involved." (Internal quotation marks omitted.) *Id.*

¶ 18    Claffey chiefly relies on *Robinson v. Meadows*, 203 Ill. App. 3d 706 (1990). In *Robinson*, the defendants' two dogs started barking and jumping when someone knocked on the front door. *Id.* at 708. One of the dogs, Ben, became particularly agitated. *Id.* Jamie, a visiting four-year-old girl, frightened by the dogs' behavior, screamed. *Id.* at 709. In response, Ben viciously attacked Jamie, tore her lip, and caused other injuries to her face, neck, and throat. *Id.* A jury returned a verdict in favor of the dog owners. *Id.* at 708. The pivotal issue at trial and on appeal was whether Ben attacked Jamie without provocation. *Id.* at 710.

¶ 19    The appellate court noted that the Act does not define provocation. *Id.* So, the court looked to principles of statutory interpretation, including that words must be given their ordinary and popularly understood meanings, should be construed with reference to the purposes and objectives of the statute, and a statute should be construed to give effect to what must have been reasonably intended by the legislature if literal enforcement would result in great injustice. *Id.* Using those principles, the court found a literal definition of provocation such as "an act or process of provoking, stimulation or excitement" was too expansive and its application would yield unjust and absurd results. *Id.* The court reasoned literal interpretation would mean "provocation exists whenever any external stimulus has precipitated the attack or injury by an animal, *i.e.*, whenever the animal's actions are not completely spontaneous." *Id.* To illustrate its point, the court offered two hypothetical examples:

> "[A] dog may attack an innocent child riding his bicycle down a public street because the movement of the bicycle has excited it or the sounds of traffic have startled it. Similarly, a dog may bite a bald-headed man walking down the hallway of his apartment building because, for whatever reason, the dog has developed a fear of men without hair. In each case, 'provocation' could be said to exist if that term were given its broad and literal interpretation. As a result, neither the innocent child nor the unfortunate bald-headed man would have any recourse under the statute for his injuries." *Id.* at 710-11.

The court then stated it would be grossly unfair to deny recovery in such circumstances and contrary to the purpose of section 16, which was intended to make it easier to obtain redress for injuries caused by an animal than it was under the common law. *Id.* at 711. Under a literal interpretation where provocation could be established merely by showing an animal's attack resulted from some outside stimulus, a plaintiff would almost never be able to prevail. *Id.* The court further observed that prior precedent supported that provocation does not exist when a dog viciously attacks a victim out of all proportion to the unintentional act involved. *Id.* at 713 (citing *Nelson v. Lewis*, 36 Ill. App. 3d 130, 134 (1976)). Finally, the court found that while Jamie's scream triggered Ben's attack, the assault was so savage that her scream could not amount to provocation as a matter of law. *Id.* Therefore, the court reversed the trial court's denial of her motion for judgment *n.o.v.* and remanded for a new trial on damages. *Id.*

¶ 20    We do not find *Robinson* or the other cases Claffey cites compel the same result in this case. Claffey's assertion that his hand was merely present in the mail slot ignores what we believe are significant facts and circumstances that distinguish this case. By placing his hand

through the mail slot into the interior of the Huntleys' house, Claffey breached the enclosure that otherwise separated and protected him from the Huntleys' dogs. But for that act, the dogs could not have come into contact with him. We also find it significant that the mail slot's interior flap had a spring-loaded hinge. This feature required the deliberate act of pushing it open for a hand to reach inside the house. Indeed, Claffey testified he held it open on purpose.

¶ 21    These facts render Claffey's actions quite different from "the innocent child" riding his bicycle down the street or "the unfortunate bald-headed man" walking down the hallway of his apartment building that were contemplated in *Robinson*. In those instances, no barrier separated the person from a dog if it reacted to the stimuli of their ordinary act. But Claffey is not similarly situated to those hypothetical plaintiffs. Rather than a mere external stimulus, Claffey took the additional step of introducing a stimulus into the dog's separate environment, exposing himself to a possible reaction.

¶ 22    In our view, the action precipitating the bite in this case is akin to reaching over a fence or into an enclosure in which a person knows or should know a dog may be confined. Generally, courts have found—both under the common law and under more strict statutes—that a plaintiff may be precluded from recovering for injuries sustained in this manner. See, *e.g.*, *Farley v. Picard*, 29 N.Y.S. 802, 803 (Gen. Term 1894) (stable employee who was bitten when he reached for a blanket into a stall housing a chained mastiff could not recover; "it was only by some such means that he could have received the injury of which he complains, because the dog, being securely chained within the stall, could not come to him to bite,—he must go to the dog to be bitten"); *Badali v. Smith*, 37 S.W. 642 (Tex. Civ. App. 1896) (dog owner not liable for bite when boy put his hand through an opening in the fence of a dog's enclosure); *Matson v. Kivimaki*, 200 N.W.2d 164 (Minn. 1972) (child bitten when he passed through neighbor's fence); *Blair v. Jackson*, 526 S.W.2d 120 (Tenn. Ct. App. 1973) (adult could not recover if bite occurred when he leaned over fence); *Kenney v. Barna*, 341 N.W.2d 901 (Neb. 1983) (child bitten when she put hand through fence to pet dog). But see *Stroop v. Day*, 896 P.2d 439 (Mont. 1995) (plaintiff could recover for bite sustained when his hands and forearms dangled over defendants' fence).

¶ 23    In those cases, the court typically found the injured person to be a trespasser or contributorily negligent—issues not present here. Indeed, we recognize that contributory or comparative negligence is not an available defense under the Act. *Johnson v. Johnson*, 386 Ill. App. 3d 522, 540 (2008). But the plaintiff's fault is not irrelevant either. To the contrary, a plaintiff's contributory fault is relevant "to the extent that it relates to the element of provocation." *Id.* Thus, a trier of fact may consider the plaintiff's fault insofar as it could amount to provocation.

¶ 24    On this point, we take guidance from *Engquist v. Loyas*, 803 N.W.2d 400 (Minn. 2011), in which the Supreme Court of Minnesota addressed whether provocation could include consideration of the plaintiff's fault under that state's statute, which is the same in substance as in Illinois. Like Illinois, Minnesota courts do not recognize contributory or comparative negligence as a defense in dog bite cases. *Id.* at 405-06. Yet, the court observed that provocation nevertheless "focuses on the plaintiff-victim's conduct and requires both the plaintiff's direct knowledge of the danger and that the plaintiff-victim voluntarily exposed herself to that danger." *Id.* at 406. The court continued:

> "Provocation under the statute has a narrower meaning than contributory negligence. Specifically, a plaintiff-victim who voluntarily and unnecessarily provokes a dog in a

manner that invites a dog attack is not entitled to recover. It is not necessary that the plaintiff-victim intend to provoke the dog. Rather, provocation involves voluntary conduct that exposes the person to a risk of harm from the dog, where the person had knowledge of the risk at the time of the incident." *Id.*

The court then remarked that "whether a dog was provoked *** is primarily a question of fact for the jury." *Id.*; see also *Brans v. Extrom*, 701 N.W.2d 163, 167 (Mich. Ct. App. 2005) ("The question of provocation is a question of fact to be determined by the jury on the basis of the circumstances of each case.").

¶ 25 We likewise believe provocation is generally a question of fact and the fact finder may consider whether the plaintiff had knowledge of the risk of harm from an animal and voluntarily exposed themselves to that risk. *Cf. Stehl v. Dose*, 83 Ill. App. 3d 440, 443 (1980) ("[W]hether plaintiff's conduct amounted to provocation is not clear. Reasonable men would differ, and accordingly, we view this issue as one especially suited to jury determination."). If so, and the plaintiff's actions would be reasonably expected to cause a normal dog in similar circumstances to react in a manner similar to that shown by the evidence, the fact finder may conclude the dog was provoked.

¶ 26 We believe consideration of the plaintiff's fault as provocation in similar circumstances is consistent with the purposes of the Act, especially when the plaintiff's actions subvert measures that provide protection from the animal. While the Act intended to make recovery easier than it was under the common law, which required a plaintiff to prove the owner knew or should have known of their dog's propensity to bite, that is not the Act's sole aim. The Act does not impose strict liability on dog owners (*Robinson*, 203 Ill. App. 3d at 711), and we have recognized the purpose of the Act "is to encourage tight control of animals in order to protect the public from harm." (Internal quotation marks omitted.) *Beggs v. Griffith*, 393 Ill. App. 3d 1050, 1054 (2009). We have also stated that the legislative intent behind section 16 was to protect people who " 'may not have any way of knowing or avoiding the risk the animal poses to them.' " *Johnson*, 386 Ill. App. 3d at 539 (quoting *File v. Duewer*, 373 Ill. App. 3d 304, 307 (2007)). Consistent with those purposes, we find these remarks from the Supreme Court of Louisiana relevant:

> "When a person who knows the security measures established by the owner, having abided by them in the past, nevertheless breaches that security, he eliminates the dog's isolated environment and, in essence, turns the dog loose upon himself. This is not a case of a dog running down the street unfettered to prey upon the public. The owner secured the dog against contact with outsiders by enclosing the dog within the fence ***. Secured, the dog posed no unreasonable risk of harm. Secured, the dog also was not subject to provocation. Secured, the dog was able to guard and protect his master's home with no undue risk of harm to the innocent public. By breaching the security that the dog's owner had created, the plaintiff negated that security." *Pepper v. Triplet*, 2003-0619, pp. 24-25 (La. 1/21/04); 864 So. 2d 181.

Though the Louisiana statute differs from ours, these observations inform our consideration of the facts and circumstances here.

¶ 27 In this case, the Huntleys secured their dog against contact with outsiders by keeping it inside their home. "Securing dogs *** is what is expected of a dog owner—it protects the dogs and it protects the innocent public." *Id.* at 24. But by breaching that security, Claffey encroached on the dog's isolated environment and exposed himself to risk of harm. The dog

- 7 -

could not have come into contact with Claffey under these circumstances. Echoing *Farley*, Claffey had to "go to the dog to be bitten." Furthermore, Claffey knew of and had a way of avoiding the risk the Huntleys' dogs posed to him. He testified that he would sometimes bundle their mail and leave it between the screen and front door for that very reason. Moreover, regardless of Claffey's intent or purpose in placing his hand through the slot, a jury could reasonably expect a normal dog to perceive a hand entering its enclosed environment as an intrusion and react as it did; in other words, that this bite was provoked. Provocation focuses on the dog's perspective. *Kirkham*, 311 Ill. App. 3d at 793. And interaction with dogs is so common that jurors could draw their own conclusion based on their common sense and experience. See *People v. Rudd*, 2020 IL App (1st) 182037, ¶ 58 ("When evaluating evidence and 'choosing from among competing inferences, jurors are entitled to take full advantage of their collective experience and common sense.' " (quoting *United States v. O'Brien*, 14 F.3d 703, 708 (1st Cir. 1994))). Thus, here we agree with the trial court's finding that "a reasonable jury could conceivably infer from the evidence in this case that the act of sticking his entire hand or a portion of his hand through the mail slot could be considered provocation."

¶ 28    As a reasonable jury could infer that the dog was provoked, even from Claffey's uncontradicted testimony, we cannot conclude the evidence so overwhelmingly favors Claffey that no verdict in favor of the Huntleys based on that evidence could ever stand. Therefore, we find Claffey was not entitled to a directed verdict or judgment *n.o.v.*

¶ 29    For the same reasons we have outlined, we do not believe the verdict was against the manifest weight of the evidence. Further, we note that in this case the circuit court did not provide a literal, expansive definition of provocation that the *Robinson* court found improper. Rather, the court instructed the jury on provocation with the definition established in *Kirkham*, that was decided a decade after *Robinson* and is consistent both with *Robinson* and other Illinois appellate cases that examined provocation. We likewise note that the circuit court did not instruct the jury on comparative negligence. Therefore, we presume the jury properly confined its considerations of Claffey's possible fault to the extent it related to provocation as defined in *Kirkham*. See *People v. Birge*, 2021 IL 125644, ¶ 40 (jurors are presumed to follow the instructions given by the court). Accordingly, the trial court did not abuse its discretion in denying Claffey's motion for a new trial.

¶ 30                                    III. CONCLUSION

¶ 31    Based on the foregoing, we find the trial court properly denied the motion for directed verdict, motion for judgment *n.o.v.*, and motion for new trial.

¶ 32    Affirmed.